thank you your honor timothy coates on behalf of appellant dr riviera i would like to reserve five times for rebuttal i will keep my eye on the clock as i start approaching that area this case involves confluence of two important policies under california law and i think the importance is underscored by the nature and number of the amici in this case addressing both issues one is the scope of the medical injury compensation reform act known informally as micro and the other the immunity provided to psychotherapists and psychiatrists under civil code section 43.92 concerning the duty to warn a specified individual of a threat posed a serious injury posed by a psychiatric psychologist patient i will turn first to the statute of limitations uh issue only because it also overlaps with the cross field issue as to whether this is a professional negligence action within the meaning of micro and i think that is settled as the district court correctly recognized by the california supreme court in hedlund versus superior court where the court in the context of talking about a case based upon their failure to warn of an attack uh that the diagnosis and appropriate steps necessary to protect the victim are not separate or severable but together constitute the duty giving rise to cause of action which is to say a physician doesn't make a decision whether to warn or not to warn unless they have made an assessment of the patient in the course of therapeutic treatment and i think that brings it core within the terms of micro certainly as interpreted by the california supreme can i ask can i ask a question about that um it's kind of been pitched as it's either a microclaim or it's you know it's not a microclaim couldn't it be both could was there i um was there ever any other claim other than a micro claim at issue could could a plaintiff plead both a microclaim and a violation of the privacy separate from micro i don't think so because so long as it arises out of the rendition of professional services you still end up ultimately dealing with a claim covered by the act because again the nature of the act is to uh you know cap damages put other limitations for the benefit of protecting malpractice insurance rates from rising that's the express purpose of it it is a liability minimizing statute there's just no question about it and those purposes would be defeated if in the course of providing medical treatment you could get around it by saying well i'm just pleading something else even though it directly arises out of the professional services you're rendering good example of this is the barris versus county of los angeles case it's a patient dumping case involving mtala the federal statute the federal statute liability standards are higher than mere negligence they're not quite intentional tort but they're pretty high because you have to have kind of a you're transferring a patient for an improper non-medical reason and there the plaintiff argued you didn't transfer me because i was medically stable you just wanted to dump me typical mtala claim and the supreme court said that claim is still governed by micra because determination of whether or not you're stable to transfer ultimately is a medical decision and that goes back to the purposes of micra to you know lower premiums and i think that's exactly what we have here it makes no sense to say that a physician's decision whether or not to warm is not tied to the diagnosis and treatment and i'll get to when we talk to the merits of the immunity but i think that's shown here because that's kind of what plaintiff's case eventually evolved into was you negligently determined that i presented a risk that required a warning so i think under the governing case law this just isn't a circumstance where you are outside of micra this is kind of the core medical judgment that these professionals exercise when they determine whether or not somebody presents a serious threat of injury to an identifiable party the plaintiff cites his reply brief the buchel case i don't think that's any different that is your standard informed consent case the supreme court in california has recognized two types of informed consent cases one is within micro that's where you don't tell the plaintiff a potential complication you have the operation complication occurs you then perform a surgery beyond what they expected the other is where you've told them they know and then you go in and you do a completely different procedure another example that's the perry case for a woman goes in for one type of surgery and comes out with an unwanted breast augmentation those are very extreme cases there the conduct does not really arise out of the true exercise of medical judgment but a conscious decision to do something that's not based on medical judgment and i think here again you can see that plaintiff kind of edged into that because their old case eventually you know evolved into this was a negligent diagnosis case so i think under the governing case law this squarely falls into micro the type of cases that don't are generally like the bigler case where the person's selling a medical device or putting someone in a procedure that's not that they have a financial interest in but isn't really related to the actual medical care that's being provided the so versus shin case good example intentional infliction claim what was it based on the doctor through blood and tissue at the plaintiff not a difficult call that that's not something doctors do that's not really medical treatment but those are the extreme kind of cases that get taken out of micro so what i mean what's interesting to me about your explanation is it suggests that you could lead the two in the alternative because there is some sort of a dividing line where it's it's a micro case if it's involved with their professional responsibilities but if your allegation is look it you know it could be i don't know whether it's going to be part of their professional responsibilities or an extreme example they could plead both couldn't they you can you can plead but but if your facts ultimately go down into was this medical judgment exercised properly it's a it's a micro case and and i think that's what we're getting down but i thought you're i thought you were saying that in some of these other cases uh like where the doctor threw the blood on the patient that's not a micro case because that's not his professional duties he was clearly acting outside of correct that's not medical judgment or anything that's getting angry but right but that's my point is that here if i mean isn't at some point wouldn't that be a jury question and and maybe it's moot because that it doesn't appear that that was the question that was given to the jury in this case it appears at least i mean correct me if i'm wrong that the jury was solely presented with a micro theory that that that's correct but but i will say that i think in this context where you're talking about a failure to warn based upon you've assessed a patient you think he presents a threat to an identifiable individual that that's going to be inherently a medical determination right because your decision to warn or not to warn is based upon your evaluation and certainly that's what this case is based on that i mean there's no allegation that this wasn't a product of dr revera's examination and exercise professional judgment basically they said it was wrong or it didn't rise to a level sufficient under the statute which i'll talk about on the merits of the of the immunity but that's what their pitch was so can i can i just ask about the statute of limitations then sure i mean it seems to me it boils down to whether or not uh there's equitable tolling that applies uh to this statute and we don't have a california case you know as i understand that you you are suggesting we should certify this question to the california supreme court is that right i i i think two answers that the one is i think lancy case in dicta and we acknowledge it is dicta talks about 340.5 as not being told plaintiff cites the belton case which is statutory tolling but i i note that lancy is after belton so i think the supreme court could well say yes you could have statutory tolling because you always assume the legislature knows what it's doing and you have to you know have statutes uh uh you know interact in a rational manner but that doesn't mean it's an open invitation on on equitable tolling i think lancy is dicta that the court under its case law pretty much should follow as required to follow second we cite gutierrez versus mo feed which is a one-year statute of limitations case and the plaintiff argued you know what the statute should be told because i thought there was negligence i went to an attorney and he said there was no negligence i didn't have a lawsuit and the court used the term tolling when talking about that the one-year period is not told that's the language gutierrez uses so i think the california supreme court has in lancy kind of reaffirmed what it said in gutierrez because gutierrez predates lancy i think by at least 15 years or something about that but wait are you suggesting it's clear enough we should decide this or are you asking us to certify it i'm saying if this court does not find lancy or gutierrez compelling and it believes it's truly an open so your position is if we're not going to rule in your favor then we should certify it well because i do think it would be a departure from california law because if we have the company supreme court even in dicta and lancy saying there's no tolling and we have gutierrez saying there's no tolling if this court's going to find tolling i think we should at least ask the california does it matter whether it was at the motion to dismiss stage versus summary judgment uh you didn't re-raise this question this issue on summary judgment but to me it seems like it's a pure legal question um so i i'm trying to figure out whether we should just you know defer to the district court because it was at the motion to dismiss stage and uh you know it seemed plausible that there was a question about how much uh you know rivera or yeah what rivera knew at the time now there's not that i think it ultimately is just a pure question of law because the district court said denied the motion dismissed because i find equitable tolling applies and there might be grounds for equitable tolling if we were arguing that on the merits there's no equitable tolling no reasonable reliance all those things i think you'd be right you know because that is the kind of there's not really a dispute here on the facts the real it's the dispute to the extent that it's you know is a real dispute is is a is a pure legal question correct i think that's correct um i will turn now to the uh merits of it the 4392 and i think that the the ewing one and ewing two are the leading authorities on this they're practically the only authorities and i think it should be significant to the court the absence of cases where there's an attempt to impose liability based upon an actual warning given and i think it's because the statute is so protective i mean i think there's you know few instances probably none in which someone gives in warning in which the therapist doesn't at least have a subjective belief that the patient poses a dangerous a serious threat of physical harm to an identifiable identifiable person i think that's why you find more failure to warn type cases because then something bad did happen but ewing one and ewing two are critical in which they point out that the inquiry about a serious injury threat seriousness doesn't go to the likelihood that it's going to happen the one thing that's abundantly clear from the legislative history it's made clear in ewing one and ewing two is it's not a battle of experts as to whether the therapist got it right as to the likelihood of attack and that's because everybody recognized the legislature in particular the difficulty of predicting dangerousness and that's why it only requires a serious threat and in ewing the court notes a threat of death is a serious threat as a matter of law you don't need an expert to say death is serious hold on a second though because i i mean if that were your interpretation i mean that doesn't the statute say serious threat of grave bodily harm or death yes so then why does it have serious it could just say threat of grave bodily harm or death the fact that it says serious suggests that serious does uh mean something different than referring just to the the consequences of the threat but it's how how serious is the threat well it seems to me it would be the logical way to read that two but two things one ewing is very expressed in its interpretation of serious right it says serious goes to the nature of the threat that's a holding of the california court of appeal and i believe this court is bound by it unless it's clear the california supreme court would hold otherwise that has been the law in the california for over 20 years i think the court's probably not free to depart from that under its own case law second the ewing court talks about it being a threat and i think if you get into that notion how serious is it in order to warn does it have to be 50 50 does it have to be 40 you get right into the mischief that yeah but i mean i there's got to be some limit because under your theory if there was a one percent chance of a death threat then they'd be they'd be protected and i don't know that i'm willing to go that far either well i mean it may it may depend on whether you're the object of the death threat or not i mean i'm talking about an individual if you get to 25 or 30 here the doctor said it was low to moderate if moderate's 40 and you're the potential target that looks pretty significant to me if i'm the potential target and i think what the legislature wanted to avoid getting into was precisely this sort of slicing and dicing down into increments okay council i'm trying to figure out what the implication of your argument is so i want i want to be very specific what's the mistake that was made below the mistake made below was that there was undisputed evidence that dr revere believed this was an actual threat she may have characterized it as low to moderate but it was a threat of a serious injury within the meaning of the statute which is death under the ewing case and that she actually believed and then she did communicate it which is what's required all right so you still haven't told me what the mistake is now you said undisputed evidence does that mean that the district judge should have taken this from the jury yes absolutely the district court probably should have granted summary judgment when the why is it wrong to go to the jury on whether the doctor thought there was an actual threat and whether the doctor actually believed why can't that be a jury question because what would the evidence be that she didn't actually believe that and in fact plaintiff's case didn't focus on again whether or not dr revere actually believed it it was she should not have opined that to begin with because she shouldn't have assessed him as a realistic threat that this was a meaningful threat that was 90 of the plaintiff's case plaintiff's counsel even an argument said look if you agree with me that this isn't serious i.e likely to occur then you don't have to get to whether she believed it or not because it's not a serious so counsel at this point uh to argue that the district court should have taken the issue from the jury is to tell us that the that the judge should have granted that there's no way that the jury could have could have decided anything else correct okay that's a very very steep hill decline i think you had a battle of expert witnesses here including dr v i don't know how to pronounce her last i don't know how to pronounce her last name i i read her testimony on friday and i have to say i was very very concerned about things that she was testifying to i was very bothered by that but then i went back to the district court's orders and discovered that you insisted um that that the that the plaintiffs had to show that there was a violation of her professional duty here and that you proposed your own witness um and that you had so we had a battle of expert witnesses as to whether the duty of care had been violated and if so it looks to me like you've left the door wide open for this no for two reasons one in the motion for summary judgment we argued the immunity in response plaintiff submitted the testimony by the way again under this misnomer that you can erode the diagnosis judge district court tonight counsel i'd like to ask you a question at least for me looking at the record it looks like that your your motion um for judgment notwithstanding the verdict was late and the motion was converted uh to rule 60 um so it really seems like you haven't preserved the sufficiency of the evidence um based upon filing a late motion i will note your honor that the judge treated as a rule 60 motion and went to the merits of it as to whether it had to be vacated a new judgment entered um and so he did treat it as in and rule on the merits you're right the rule 50 motion was late but the district court did exercise its discretion and reached the merits on this issue on judge by these question again you try the case as it ends up being presented we did not think they should have gone to the jury at all under california law if you're going to have a medical malpractice professional negligence action you have to have testimony on the standard of care now here the standard of care probably is do you know what 4392 provides physicians need to know that but the other aspect which was were you negligent in diagnosing is not part of the case ewing makes that clear the legislative history makes that clear we move to exclude yaten's testimony on the grounds that you can't you're just going to testify about negligence that's not what the standard is so yes you have an expert come in and say you need to understand what 4392 provides but at the same time you don't get to say oh and by the way you've reached the standard of care because you didn't accurately diagnose that clearly is something that the legislature did not want to have happen at trial very clear from the case law it's not a battle of experts on whether you got it right council do you ask the district court for uh to give the jury a specific verdict that is that to ask them to answer specific questions then put the ewing test in there not ask for that no the court has anything else okay thank you we'll give you uh some extra time on rebuttal that's fine thank you mr norton good morning uh fred norton on behalf of ronald turner may it please the court i think part of the problem that we have here on this appeal is that the arguments that dr rivera wants to make now excuse me are at war with the arguments that she made in the trial court and i'm going to get to that within some specific points i think there are five points that i need to address to some extent between the appeal and the cross appeal and the first is whether this is a micro case it's not the second is whether the statute of limitations barred his claims it does not and then i can get to the substantial evidence issue which i do think is forfeited uh and the instructional questions now is this a micro case it is not uh my friend was asked can you have both a claim that is micro claim and a claim that is not and absolutely you can we cited that case it's on page 31 of our brief it's waters versus boris and the california supreme court said of course you can have both and in fact each of these cases that we're talking about the perry case the so case uh the the unruh case and each of those there is a claim for medical malpractice and there is a an additional claim for an intentional tort and the plaintiffs in those cases prevailed on their medical malpractice claims well so as your position you had you did you pled uh an evasion of privacy claims separate and apart from medical malpractice absolutely and and and let me ask you okay so you say absolutely but yet when there's a pro se complaint here so i i understand we got to read it in light of the rules for reading a pro se complaint but then when council and i don't recall whether you were the council or not but they came in and tried to amend the complaint and add uh privacy claims and the district court said no uh we're not going to do that at this late date doesn't that sort of undermine the position that there were privacy claims already existing if they tried to amend to add them it did not happen quite that way so let me address that so i did come in shortly before trial uh the the complaint the second amended complaint filed pro se uh alleged a claim for medical malpractice and alleged to claim under california civil code section 1714 which is california's general tort statute and uh what we asked was that the jury be instructed on each of the theories that were consistent with the general tort claim uh and so that was an invasion of privacy claim that was a violation of the private right of action for invasion of privacy under the california constitution and a violation of california statute which protects confidential medical information the cmia all those were subsumed within the claim and then what we pointed to when we made that argument to the court was this is already in the case it's already in the complaint everybody's always understood it was in the complaint um if you look at uh the supplemental excerpts of record at page 33 which was the brief that we filed pre-trial brief we cited the case management statements the complaint the court's own characterization over and over again this was described throughout the case as a privacy case it was a privacy case and absolutely there was a medical malpractice claim in there as well but it was a privacy case dr rivera and her case management statements the joint statements characterize it as a privacy claim so everybody knew that's what the case was about so you're saying your position is from the get-go this was always a dual case medical malpractice a micro case and a privacy court case he pled two causes even in his pro se complaint did that did is that was pitched to the jury because i had the impression uh that that that what ultimately you know went to the jury was just the micro portion well to be clear there's no such thing as a micro portion there's a claim and what went to the court went to the jury rather was only a medical malpractice claim and that's the error that we assigned to the trial court is we asked the court to instruct on all the theories in the complaint and the district court agreed with us that those theories were in the complaint but they did not instruct on did not instruct on them that's what but see this is the problem because at this point what was sent to the jury was a micro case i mean a micro claim that's it so if you're correct i if you're and so if you're correct don't we have to send it back for a new so that the jury could also consider negligence and is that really in your client's best interest well um if you're inclined to send it back i would rather you send it back for a new trial but i don't think you send it back let me explain why the error that we assigned to the trial court the only error we assigned to the trial court was the failure to instruct on these claims had the court instructed on these claims there's no dispute as to what the elements are the elements are that there was a disclosure of confidential information without consent and there's no dispute that that happened there's no dispute that we proved that because we were required to prove it in the malpractice claim that we actually prevailed upon at trial so on this record you can conclude that had the court instructed on the theories that were in the complaint we would have prevailed and we make this argument in our appeal brief um so for that reason i think that so you just want us you just want us to take it outside of micra because there were claims that were not presented to the jury but had they been they would have also resulted in a verdict for your client yes but i want to address your other point is there any precedent for that though i cannot point you to any precedent for that particular proposition that a theory that was qued but not presented to the jury well here's what i think would happen is that we would go back and we would make a motion that um based on the findings of the jury made at the original trial that there is uh that that dr rivera is a stopped or precluded from contesting those findings because they weren't necessarily found by the jury in the first trial but but i don't think we need to do that and i'd like to explain why uh you characterize the claim that went to the jury as a micro claim now there's no such thing as a micro claim in that sense there are claims for professional negligence right and and my argument here is that even the claim that we tried is not properly understood as a claim for professional negligence and then when we do this micro analysis in the california state courts we we we don't get hung up on labels we have to focus on what is the nature of the claim right and the nature of the claim here as a district court said on the eve of trial is this case has always been about dr rivera's confidential information so then we go to what is what are the cases or what do the cases say about what the standard is for what's a micro case and what's not because we all know there are all these cases that involve doctors treating patients and in the course of the treatment doing something that is does not qualify for micro protection right and perry that's the case in which the doctor obtained consent while the patient was under uh under medication and uh and gave her a brush enlargement that she never wanted um and so she claimed that she had been given insufficient anesthesia woke up during the middle of the procedure and then when the anesthetist realized that it happened he threw tissue and blood at her and said don't report this she won on her medical malpractice claim but she also went on her intentional tort claim so these are all wrapped up in the treatment of the patient nonetheless they're not micro claims ultimately so in our but that's not true what one was one was one claim if for example the intentional tort in the in the blood example if the intentional tort claim had not been presented to the jury it would have been a microclaim because it would have only been a professional malpractice claim right well you would still have to look past the label and so the question would be is the thing that you are complaining about the diagnosis and mr coates wants to say that the complaint was about a diagnosis and that's not true the complaint was not about a diagnosis the complaint was that dr rivera called the police and told them something that was not true based on information that mr turner had provided in confidence that was our claim and we never had to prove that she got the diagnosis wrong in order to prevail on that claim that was our claim and so if you look at what that we claimed the standard of care was is it on crossing but you would agree that the way you're characterizing it right now would require us to reverse the district court because the i don't think the district court had the same understanding of the case uh that you do right now now the district court might have been wrong but but you what you're telling us right now would require us to reverse the district court well i would ask that you reverse the district court on its determination that our claim was a microclaim in which case you would reinstate the jury verdict for the full amount without the micro damages gap but but the reason why i'm so focused on this issue is that when we look at the micro cases say they say that in order for the case to be subject to micro right the claim has to be based on the on the defendant's failure to adhere to a standard of care right that's in the uh the bigler case right so is that our claim now our claim was that this is not a professional standard of care this is the duty that everybody has to maintain confidences the second critical proposition well but you still you you did present and i and i understand there were some dynamics around why you did this but at the end of the day you presented an expert witness that you know purported to testify as to what the standard of care was right we did because dr rivera forced us to absolutely and i don't want to lose sight of this fact because it is very important that the sequence of events here and and my concern that the arguments are being made on appeal now are contradictory what dr rivera argued before when she moved for summary judgment she moved and she moved with an expert declaration and she moved because she said her client complied with the standard of care which she said came from section 4392 now that doesn't make any sense because section 4392 is an affirmative defense and she pled it as an affirmative defense so it was a bit incoherent i think but the argument that she made was that the standard of care would be established by experts and that was her argument from the moment she filed for summary judgment on but i want to come back council i i had a question for the purposes of looking at the verdict that we have if we assume what went to the jury was a microclaim is the significance of that separate from your cross appeal about what was not allowed whether or not a one or a three-year statute of limitations applies and whether it is equitable tolling so is that where this goes it's important to vote so one of course is it would if i'm correct on micra the verdict is reinstated if i'm correct on micra we don't talk about section 340.5 uh that's the wrong statute of limitations and we're under a different statute everybody agrees we get equitable tolling um so let me turn in just one moment to the special limitations just finish on the on the micro issue the only other point i want to make clear on the micro issue is that the question that the second issue second rule that we see in all these micro cases is was the doctor providing the patient with health care the thing that is being complained about is that they're providing with health care is throwing throwing blood on the patient providing health care of course not is lying to the patient about what you're doing through genetic material and unruh is that medical care it's not so what did dr rivera do what did she do she called the police that's not medical care it's not medical care well hold on a second i i i mean but it's it's it's clearly connected to her her medical duties that seems to be different here because i mean you would agree that if if if a client came in to a counselor had a weapon in hand and said i'm leaving here and i'm going to go shoot up the local school wouldn't you agree at that point that um that the counselor has an affirmative duty based on her professional responsibility to call the police immediately no and the reason why the answer is no is that that duty is not a medical duty it is a duty created by a statute and that statute is section 4392 but it's not based on any diagnosis and this is the other point that mr coates gets wrong because he wants to cite the headland and as the district court correctly found relying on ewing headland is a dead letter so the issue in headland in headland micro did apply and the reason why it applied was that at that time under tariff soft and headland the california supreme court had said that psychotherapists have an obligation to diagnose dangerousness you have to apply the professional standards to determine whether a person is dangerous in an example you gave under headland yes it would be the law was you as a professional you must predict but ewing tells us and we agree on this in fact their third brief is replete with this argument under ewing makes quite clear that under section 4392 this duty is not a medical duty it's based on objective facts what is a threat actually made did the doctor sincerely believe that a threat had been made and did the doctor take reasonable steps to communicate so i'm looking at 4392 so if i understood you correctly you just told us that under judge nelson's um hypothetical that the um that the the treating therapist or psychiatrist does not have a duty uh to call the police not not based in common life it's a duty based on the statute there there is no duty that arises from the fact that they are a professional because you don't look to the standards for psychotherapists to make that decision that comes out of that that that's my reading of tariff soft your reading of tariff soft is 100 correct but ewing tells us that 4392 amends the tariff soft rule and and amends it to take into consideration justice mosk's concerns in dissent and justice mosk's concerns in dissent as ewing tells us was that it was not correct not appropriate to impose a standard of care on psychotherapists that made them predict dangerousness so the court said so i'm sorry the legislature said we won't do that right the 40 4392 doesn't i don't read it i can't read any provision in there as creating a duty i see it only as creating an immunity if you exercise the duty that's created under tariff soft 4392 a is the duty 4392 b is if that is the strangest uh uh language creating a duty there shall be no monetary liability on the part of and no cause of action shall arise against that reasonable construction of the english language so the obligation to the duty to protect comes from 4392 a not b but let me i do want to try to address this special mutations argument because it's a distinct argument and it's important that we we get there so even if i'm wrong on micro we would still have to look at section 340.5 and section 340.5 has an outer bound and a lower bound of you know the two prongs right and so one year versus the three year exactly and so what we know from belton is that and we know from 340.5 is that it would be equitably told by by statute it can be it can be equitably told full stop so what belton says is you got these two ports of the statute and there's a clause in the statute which says for the three-year outer bound there will be tolling only for these specified reasons and belton tells us now that that prohibition on tolling beyond the three years applies only to the three years and we agree on that we mr coach and i agree on that so belton tells us that that that language that says there shall be no tolling beyond the three years except for these reasons says it tells you nothing about the discovery the one-year discovery rule so what do we know about the one-year discovery rule it's just like every other tolling statute in california and under addison which we cite equitable tolling is generally available that's the law in california that's the settled law in california now to get around that they basically and by the way that's the way four federal judges have interpreted that they've allowed for equitable tolling in these cases they've all recognized in you mean specifically using 340.5 absolutely um that those cases are uh warney gray rigetti and thomas all cited by us and by the district court so what's on the other side of the ledger here all right so there's gutierrez and gutierrez does not say that we don't get equitable tolling what gutierrez says is that if you say if your complaint is that your lawyer told you you had no claim that's not you don't get equitable tolling that's all we know from gutierrez all right which is not surprising you might have a claim against your lawyer but we don't give people equitable tolling for that so then they go to lancey now lancey doesn't help them either it's not a 340.5 case at all it's a different statute but it has the same structure outer bound lower bound and in that case the court says when the legislature it has exactly the same problem is the outer bound toll equitably told and the court says it's not equitably told but again we're talking about the outer bound and the court is completely clear that what we're talking about here is when are you when can you get equitable tolling of the outer bound when the statute says you only get tolling for specific reasons right but but the court is very specific and lasty lancy that you do not get that they're not talking about the discovery rule they're only talking about that outer bound for which the legislature said you don't get tolling beyond the outer bound all right so lansky doesn't change anything about that moreover lansky says and this is important for the procedural posture of the case you can still get equitable estoppel you can still get equitable estoppel of the statute of limitations so and and found it was appropriate in that case to do so so the reason why that's important here is that the had other bases that would make it timely one was statutory tolling that dr rivera was outside the state that's um you can see that from the base of the complaint we don't have a record on that because dr rivera never came back to the issue but there's also equitable estoppel because what happened here was mr turner went to see a mr a marine veteran went to the veterans administration had his confidence is violated filed a timely claim under the federal tort claims act well council i i mean i i think just for myself if equitable tolling applies i don't think there's a dispute as a legal matter i don't think there's a dispute that the facts here would support it i think the real question is that threshold legal all right and i appreciate that but even if i because on the face of the complaint we have to go back to what was this is the question what was the district court's error and the error would be that would be that it should have dismissed the complaint but would have to be with leave to amend and here we would have grounds to amend for equitable estoppel because dr rivera never told mr turner that she was a staffing psychiatrist who had no employment relationship with the veterans administration so we had no to know that until dr until dr you're out of your your two-way um i am past my time i i did want to spend a moment if i may to address the substantive argument oh yeah we'll give you another minute and and we'll add it on thank you on the question of 43 92 there were jury instructions and to judge by these questions what was the error below there what dr vera doesn't actually identify an error she just wants to argue she was entitled to judgment as a matter of law there were jury instructions they're not challenged here on appeal the jury instructions track the elements of section 43 92 and they had three parts is there an actual threat and that's california law has to be an actual threat we get that from ewing we get it from calderon there must be a threat um from ewing in other cases there's this additional gloss which is that the therapist must actually believe there is a credible threat and there was substantial evidence that she did not believe it now mr coat said we didn't argue that not only did we argue if you look at my closing argument i spent 10 pages of the closing argument walking through the specific evidence which showed there never was a threat objectively he did not make a serious threat a serious credible threat which is how the instruction defining serious threat was given to the jury of course we argued that then there's five pages of me walking through all the evidence which says that dr vera did not believe there was a threat because she didn't say there was a serious threat she didn't act like there was a serious threat and not a single person she spoke to told her there was a serious threat they said the opposite she did not believe that and we absolutely argued that so the jury had ample evidence on which to conclude that dr rivera who had the burden of proof on this issue did not need it and so for that reason as well the jury verdict they don't argue substantial evidence they don't say they're even subject to substantial evidence so our argument would be michael does not apply should not have applied on the theories plotted in the complaint he should have been allowed to recover the full amount the jury gave him it's clear that equitable towing applies under 340.5 as federal courts have held and under substantial evidence standards of what applies here the jury verdict on the affirmative defense must stand okay thank you counsel um and mr how i'm not sure how much let's add at least two minutes let's give them three minutes or uh for a rebuttal thank you honor much much appreciated you know turning to the merits argument 4392 our position is we were right on summary judgment but if you look at the standards of 4392 they're met in terms of what the evidence as to what dr rivera subjectively believed a lot of their she didn't believe it language which as we know that we think under the statute you don't go into those kind of qualitative determinations our expert said that the issue is did she comply with 40d 292 so she's outside the terra's off standard that's the only professional thing at issue here is this the standard and is this met their expert dr veeton testifies in opposition summary judgment then wasn't a serious threat because she was wrong in determining that it was likely to occur and again i know what i sound like a broken record if you look at ewing if you look at the legislative history the one thing that is absolutely clear is the legislature did not want there to be a battle of the experts as to whether or not there was a correct diagnosis and that goes whether there's a likelihood or how great the likelihood because you're going to put that camel's head into the same problem if you start slicing and dicing how much is enough to trigger the duty to warn forty percent thirty percent twenty five percent that's something that i think in drafting 4392 the legislature did not want to get into and they didn't want that to come in the back door as it did here through a medical negligence case by having a doctor come in and say that wasn't enough to be a serious council the the concern i have about your argument that you're presenting it now is you're basically giving me a free pass in these circumstances that uh you know of course a doctor is going to warn and you're enticing you're incentivizing them to warn under any circumstance they hear any threat of death whether it's imagined a dream anything they're incentivized to go report that because they're they they have a professional duty uh perhaps to report it but your your position is they can't be held liable under the law because it's a threat of death well the case law is do they sincerely believe not if it's a joke ewing makes that point not if they make statements like oh this is incredible i really don't believe this but i'm erring on the side of caution that's not what the evidence is but you are absolutely right this is an extremely protective standard it is designed to be an extremely protective standard it is designed to err on the side of caution if there is an actual belief that a threat is presented it is a policy decision the legislature make to it made to encourage the duty to warn because the backlash against terra's off which they thought was going to give rise to absolutely this kind of you're going to warn all the time or you're going to be afraid being sued so they legislature drew this balance and i again think it's telling you look at california case law you will not find a case out there based upon giving an improper warning and i think it's because the statute is drafted the way it is this is plainly micra it is based upon her exercise of professional judgment because she only makes the report because of her diagnosis headland remains good law on that point a case they cite unruh haxton even cites it for that point and i note if the court again is debating whether this is a microclaim that's a sea change under headland i would certify that to the california supreme court because that's a nuclear bomb in psychiatric practice thank you counsel thank both counsel for uh a real real well done on helping us to clarify a very complicated case so the case is now submitted and we will turn to our third and final case for set for argument today state of washington versus united states department of state case number 20-35391 and um mr aguilar are you prepared
judges: Bybee, Whaley, Nelson